STEVEN WILCOX & others[1] vs. RIVERSIDE PARK
ENTERPRISES, INC.

Hampden. November 22, 1985. — January 14, 1986.

Present: ARMSTRONG, SMITH, & FINE, JJ.

*Limitations, Statute of. Conflict of Laws.*

A negligence action brought by a Connecticut resident seeking damages for
personal injuries sustained in Massachusetts at an amusement park oper-
ated by a Massachusetts corporation, commenced more than two years
after the injuries but within the three-year limitation period of G. L.
c. 260, § 2A, was nevertheless barred by virtue of G. L. c. 260, § 9,
the borrowing statute, which looked to the law of Connecticut, where
such actions were governed by a two-year statute of limitations. [420-
422]

CIVIL ACTION commenced in the Superior Court Department
on November 21, 1984.

*George C. Keady, J.,* ordered entry of summary judgment
for the defendant.

*Edward V. Leja* for the plaintiffs.
*Jeffrey L. McCormick* for the defendant.

FINE, J. A little-used Massachusetts "borrowing statute" of
ancient origin is the basis for the claim that this personal injury
action is time-barred. The statute, G. L. c. 260, § 9, provides
as follows:

"If, when a cause of action hereinbefore mentioned
accrues against a person, he resides out of the common-
wealth, the action may be commenced within the time
herein limited after he comes into the commonwealth;
and if, after a cause of action has accrued, the person
against whom it has accrued resides out of the common-
wealth, the time of such residence shall be excluded in

[1] Donald Wilcox, individually and as Steven Wilcox's next friend, and
Gayle Wilcox.

determining the time limited for the commencement of the action; *but no action shall be brought by any person upon a cause of action which was barred by the laws of any state or country while he resided therein"* (emphasis supplied).

It is the italicized clause with which we are concerned. That clause would literally bar a nonresident plaintiff from suing in Massachusetts on a cause of action barred by the laws of the State in which the plaintiff resides. Very simply, the issue is, does the statute mean what it says?[2]

The plaintiffs, a minor and his parents, have resided at all relevant times in Connecticut. In their complaint, filed on November 21, 1984, they allege that on July 22, 1982, the minor plaintiff sustained personal injuries while riding a "rocket ship" at an amusement park operated by the defendant in Agawam, Massachusetts. The defendant, Riverside Park Enterprises, Inc., alleged to have been causally negligent, is a Massachusetts corporation. Relying on G. L. c. 260, § 9, the defendant filed a motion to dismiss the complaint. The motion was accompanied by an affidavit which stated that: in 1982, an estimated half-million Connecticut residents attended the park; in that year the defendant spent $243,625, more than half of its total advertising budget, in Connecticut; and in 1984,

---

[2] The caption for § 9, editorially supplied in the General Laws (1984 ed. ), is misleading. The caption reads: "Suspension in Case of Non-Resident Defendant." This language provides no notice that the statute would bar an out-of-State plaintiff's claim on the basis of a shorter statute of limitations in the plaintiff's home State. However, even an official title to an act does not control the plain provisions of the statute, and, if there is any variation between the title and the body of the statute, the latter governs. *Spellman* v. *Metropolitan Transit Authy.*, 328 Mass. 446, 449-450 (1952). *Breault* v. *Ford Motor Co.*, 364 Mass. 352, 353 n.2 (1973). The plaintiffs have not raised this as an issue at any stage of the proceedings. Nor have they argued, as they might have, that the final clause of the statute applies only as an exception to the tolling provisions applicable to out-of-State defendants. But see *Woodcock* v. *American Inv. Co.*, 376 Mass. 169, 176 (1978), in which at least one of the defendants was a Massachusetts resident, and the borrowing statute was held to bar the action because it would have been barred in Missouri, the State in which the plaintiffs resided. See also *Sylvania Elec. Prod., Inc.* v. *Barker*, 228 F.2d 842, 847 (1st Cir. 1955).

$273,000 of its total advertising budget of $699,000 was spent in Connecticut. No counter affidavit was filed. We note the location of Agawam, three miles from the Connecticut border and approximately twenty miles from the greater Hartford area. The judge allowed the motion, treating it as one for summary judgment.

If it were not for the borrowing statute, Massachusetts would apply its own three-year statute of limitations, and the action would not be barred. G. L. c. 260, § 2A. Massachusetts views statutes of limitation as relating to the remedy, and it applies its own law as the law of the forum. *Clarke* v. *Pierce,* 215 Mass. 552, 553 (1913). *Hemric* v. *Reed & Prince Mfg. Co.,* 739 F.2d 1, 2-3 (1st Cir. 1984). In a State which looks to its own statutes of limitation, because it considers the issue to relate to the remedy, a borrowing statute may, in certain circumstances, make another State's statute of limitations applicable. Restatement (Second) of Conflict of Laws § 142(1) (1969). The Massachusetts borrowing statute would appear to make the law of Connecticut applicable in this case. Connecticut has had a two-year statute of limitations for actions for personal injuries caused by negligence. Conn. Gen. Stat. § 52-584 (1985)[3]. If suit were brought in Connecticut on a common law claim for personal injuries sustained in another State, a Connecticut court would apply its own statute of limitations. *Thomas Iron Co.* v. *Ensign-Bickford Co.,* 131 Conn. 665, 670 (1945). *Brown* v. *Merrow Mach. Co.,* 411 F. Supp. 1162, 1164 (D. Conn. 1976). Connecticut has no borrowing statute. Unlike Massachusetts law, Connecticut law does not provide for the tolling of the statutory period during the plaintiff's infancy. *Burns* v. *Hartford Hosp.,* 192 Conn. 451, 458 n.4 (1984). Thus, if the plaintiffs had brought suit in Connecticut

---

[3] Connecticut General Statute § 52-584, which places a two-year statute of limitations on a number of specifically delineated tort actions, including those for personal injuries caused by negligence or reckless or wanton conduct, carves out exceptions to the general three-year statute of limitations for tort actions provided for in Conn. Gen. Stat. § 52-577 (1985). See *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 490-491 (1967). See also *Prokolkin* v. *General Motors Corp.,* 170 Conn. 289, 294-297 (1976).

more than two years after the accident, Connecticut law would have barred their recovery.

The plaintiffs argue that G. L. c. 260, § 9, does not apply because a Connecticut court would not have had jurisdiction over the defendant. Because we agree with the Superior Court judge's conclusion that Connecticut's long-arm statute for foreign corporations, Conn. Gen. Stat. § 33-411(c) (1985), would reach the defendant, we need not decide whether the Massachusetts borrowing statute would apply in a case in which the State of a plaintiff's residence could not extend its jurisdiction to a defendant. Under § 33-411(c), a foreign corporation has been subject to suit in Connecticut "on any cause of action arising . . . out of any business solicited in [Connecticut] by mail or otherwise if the corporation has repeatedly so solicited business, whether the order or offers relating thereto were accepted within or without the state." Contrary to the plaintiffs' assertion, Connecticut's jurisdiction over the defendant does not depend upon a showing of a causal connection between the solicitation of Connecticut residents by the defendant and the cause of action. That is, there need be no demonstration in this case that the minor attended the amusement park in direct response to one of the defendant's numerous advertisements in Connecticut. *Lombard Bros.* v. *General Asset Management Co.,* 190 Conn. 245, 253-255 (1983). We also agree with the judge that subjecting the defendant to jurisdiction in Connecticut would not be inconsistent with the requirements of due process. See *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945); *Hanson* v. *Denckla,* 357 U.S. 235, 251-253 (1958); *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286, 297-298 (1980). See also *Lombard Bros., supra* at 255. The "minimum contacts" test is met by the active solicitation of Connecticut residents on a continuing basis to patronize a business establishment near the State's border and the fact that the business is of such a nature that Connecticut has a legitimate concern about the safety of its operation. See *Soares* v. *Roberts,* 417 F. Supp. 304, 308 (D.R.I. 1976); *Greenwood* v. *Tides Inn Inc.,* 504 F. Supp. 992, 995-996 (D. Md. 1980). See also *McFaddin* v. *National Executive Search, Inc.,* 354 F. Supp. 1166, 1170 (D. Conn. 1973).

At oral argument, the plaintiffs for the first time raised the question whether the borrowing statute applied to a cause of action arising in Massachusetts, both the allegedly tortious conduct and the resulting injuries having occurred here. We consider this issue, although not raised in the trial court and not briefed, because such an interpretation would avoid a harsh result and because it has some logical appeal. As the State most directly concerned with the standard of care observed by the defendant, Massachusetts is the one whose laws, including the statute of limitations, it would seem most appropriate to apply. Not surprisingly, most States' borrowing statutes provide that the governing statute of limitations is that of the State where the cause of action arose. See Ester, Borrowing Statutes of Limitation and Conflict of Laws, 15 U. Fla. L. Rev. 33, 79-84 (1962); Wurfel, Statutes of Limitation in the Conflict of Laws, 52 N.C.L. Rev. 489, 525-528 (1974); 4 Am. Jur. 2d Trials, Statutes of Limitation § 41 (1966). Some potentially anomalous results would be avoided if the plaintiffs' construction were adopted. For example, under the construction urged by the defendant, if a Massachusetts resident had been injured in the same amusement park accident as the minor plaintiff and had filed suit in Massachusetts at the same time as these plaintiffs, only the Massachusetts plaintiff's suit could be heard.

We cannot, however, adopt the interpretation of the borrowing statute advanced by the plaintiffs. The language of the statute itself contains no exception based upon the origin of the cause of action. The legislative history does not support the plaintiffs' interpretation. In 1880, when the clause was first added to the statute, the Legislature rejected a proposed version which referred to the State or country where the cause of action accrued.[4] On at least one occasion, because the statute

---

[4] In its original form as proposed legislation (1880 Senate Doc. No. 34), the clause provided that the statutory provisions for tolling the statute of limitations in the case of nonresidents "shall not extend to any cause of action *accruing* in any other state or country" when all the parties were not residents of Massachusetts (emphasis supplied). However, the bill, as amended by 1880 House Doc. No. 128, and finally passed by St. 1880, c. 98, eliminated the reference to the place where the cause of action

of limitations of the plaintiffs' home State had run, the statute has been applied to bar nonresident plaintiffs from suing in Massachusetts on claims with significant contacts in Massachusetts. *Woodcock* v. *American Inv. Co.,* 376 Mass. 169, 176 (1978). Compare *John* v. *John,* 307 Mass. 514, 515 (1940); *Sylvania Elec. Prod., Inc.* v. *Barker,* 228 F.2d 842, 847 (1st Cir. 1955); *Momand* v. *Universal Film Exchs, Inc.,* 172 F.2d 37, 47-48 (1st Cir. 1948). Although most State borrowing statutes do incorporate the rule advanced by the plaintiffs, we must accept the Massachusetts statute for what it is: the only borrowing statute that makes the law of the State of the plaintiff's residence the determinative factor.[5]

In 1957, the Uniform Statute of Limitations on Foreign Claims Act § 2 (1957) was recommended by the National Conference of Commissioners on Uniform State Laws. The Uniform Act provided that the statute of limitations of either the State where the claim accrued or of the forum State, whichever was shorter, would govern. Three States adopted the recommended uniform statute before it was officially withdrawn in 1978. In 1982, the withdrawn version was replaced by the Uniform Conflict of Laws — Limitations Act § 2 (1982) which, if adopted, would make applicable the statute of limitations of the State whose law governs other substantive issues inherent

---

accrued, making reference only to the place of residence of a potential plaintiff. It provided that "no action shall be brought by any person whose cause of action has been barred by the laws of any state, territory or country while he resided in such state, territory or country." Except for minor grammatical changes, the clause has remained in the same form to the present. See Pub. Sts. c. 197, § 11 (1882); R. L. c. 202, § 9 (1902); G. L. c. 260, § 9.

[5] There is only one other borrowing statute which makes the residence of the plaintiff *a* factor. Maine's statute, adopted in 1885 (See *Frye* v. *Parker,* 84 Me. 251, 254 [1892]), provides that "[n]o action shall be brought by any person whose cause of action has been barred by the laws of any State, territory or country while *all the parties* have resided therein" (emphasis supplied). 14 Me. Rev. Stat. Ann. tit. § 866 (1980). For a discussion of that statute, albeit not helpful on the issues before us, see *Hossler* v. *Barry,* 403 A.2d 762, 765 (Me. 1979); *Ouellette* v. *Sturm Ruger & Co.,* 466 A.2d 478, 481 (Me. 1983).

in the claim. Two States have adopted this version. Massachusetts did not adopt either of the recommended uniform acts. Since 1880, the Legislature has not made any substantive change in the relevant language of the borrowing statute to achieve the result advanced by the plaintiffs or to bring the statute into conformity with the law of other States. There is at least one conceivable purpose of the Massachusetts statute as written: to prevent a nonresident from obtaining a benefit by choosing to sue in a Massachusetts court that he would not have obtained in the courts of his own State. In this case, if allowed to sue in Massachusetts in November 1984, the plaintiffs would have received a benefit that they would not have received in the courts of Connecticut. Thus, we assume, based upon the words of the statute and the legislative history, that the Legislature intended the borrowing statute to apply to such a case. Nor do we think it altogether inappropriate that Connecticut's law be invoked. Connecticut is not only the State of the plaintiff's residence; it is the State in which the infant plaintiff is experiencing his alleged disabilities; and it is a State which, because it has natural concern for the safety of its citizens, has some interest in how the defendant's business is conducted. Moreover, the plaintiffs had a significant period of time during which to file a timely action in the courts either Connecticut or Massachusetts.

*Judgment affirmed.*